**SIGNED THIS: November 28, 2016**

*[signature]*
_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**
_____


UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 15-71431 |
| John Adrian Wease and | ) | |
| Kimberly Ann Wease, | ) | |
| | ) | Chapter 7 |
| Debtors. | ) | |
| _____) | ) | |
| | ) | |
| Debra VanDettum, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-07051 |
| | ) | |
| John Adrian Wease and | ) | |
| Kimberly Ann Wease, | ) | |
| | ) | |
| Defendants. | ) | |

**O P I N I O N**

Before the Court is Debra VanDettum's Complaint to Determine Dischargeability of Debt brought against the Debtors, John and Kimberly Wease. Mrs. VanDettum alleges that the debt owed to her by the Debtors is nondischargeable because the Debtors committed fraud and other misconduct in obtaining loans from her. Because Mrs. VanDettum failed to meet her burden of proof, judgment will be entered for the Debtors and their debt to Mrs. VanDettum will not be excepted from their discharge.

## I. Factual and Procedural Background

John and Kimberly Wease ("Debtors") filed their voluntary Chapter 7 petition on September 17, 2015. On their Schedule F – Creditors Holding Unsecured Nonpriority Claims, they listed a debt owed to "Debbie VanDettum" in the amount of $11,000. The Debtors received their discharge on December 21, 2015. Debra VanDettum timely filed her Complaint to Determine Dischargeability of Debt ("Complaint"), which alleged that the Debtors owed her $7,656.90 and that the debt was nondischargeable because the Debtors committed fraud or defalcation in a fiduciary capacity in obtaining loans from her. The Complaint also made reference to the Debtors having inflicted willful and malicious injury on Mrs. VanDettum. The Debtors were briefly represented by counsel, but they have acted *pro se* in all major aspects of this proceeding.

A bench trial was held on the Complaint on October 19, 2016. Mrs. VanDettum's attorney reported that due to health problems, Mrs. VanDettum was unable to attend the trial. Over the Debtors' objection, the trial proceeded

without her. Mrs. VanDettum's husband, Ross VanDettum, and John Wease were the only witnesses.

Mr. VanDettum testified that the Debtors approached the VanDettums in 2003 and asked them for money. The Debtors told the VanDettums that they were experiencing significant financial hardships and needed help providing for their family. A loan of $3400 was memorialized in a hand-written promissory note, signed by the Debtors and Mrs. VanDettum on December 9, 2003. The note provided for monthly installment payments of $175. According to Mr. VanDettum, his wife obtained the funds for the loan by cashing in an annuity held at The Western and Southern Life Insurance Company ("Western and Southern"). Mr. VanDettum reported that the Debtors made regular payments on the debt at first, but stopped making payments when Mr. Wease was experiencing mental health problems and had trouble keeping a job. Payments were reflected on a ledger attached to the promissory note.

The Debtors continued asking for money and Mrs. VanDettum continued lending for a period of years. According to Mr. VanDettum, Mrs. VanDettum loaned $11,300 to the Debtors from withdrawals from her annuity at Western and Southern in 2005. Mr. VanDettum stated that he and his wife continued to loan the Debtors money out of a sense of "Christian concern" for the Wease family. The ledger attached to the promissory note indicates that Mrs. VanDettum loaned the Debtors a total of about $18,000 in additional funds in 2005 and early 2006. Mr. VanDettum testified that he and his wife tried to get

the loans repaid and called the Debtors repeatedly but were unable to make contact.

Mr. VanDettum testified that in August 2010, Mrs. VanDettum filed a complaint against the Debtors, as well as Western and Southern, in the Circuit Court for the Seventh Judicial Circuit, Sangamon County, Illinois. Her three-count complaint alleged causes of action for breach of contract, emotional distress, and fraud. Among the allegations were that Mr. Wease misled Mrs. VanDettum into withdrawing funds from her annuity to lend to the Debtors, and that he also used his position with Western and Southern to withdraw funds from her annuity without her consent for his own use. The Debtors did not appear to defend the state court litigation and a default judgment of $20,002.73 was entered against them. On cross-examination, Mr. VanDettum admitted that the allegation in the complaint about Mr. Wease accessing Mrs. VanDettum's annuity without her consent was not accurate.

Mr. Wease testified that he and his wife met the VanDettums in 2002. At the time, Mr. Wease was an employee of Western and Southern. He acknowledged that he was having health and financial difficulties that led him to ask Mrs. VanDettum for several loans. Mr. Wease denied that he had anything to do with cashing out funds from Mrs. VanDettum's annuity in 2005, as he left his employment at Western and Southern in 2004. He stated that no funds were transferred directly to him from Mrs. VanDettum's annuity account. Mr. Wease said that he did not respond to the VanDettums' calls due to his mental health issues.

-4-

Mr. Wease testified that he and his wife did not participate in the state court litigation due to his mental health issues at the time. However, he disputed the amount of the debt that was actually owed to Mrs. VanDettum. He claimed that he only received about $4000 in loans and that, through voluntary payments and garnishments from Mrs. Wease's paychecks, he and his wife had repaid Mrs. VanDettum over $12,000.

The parties presented brief arguments at the close of evidence. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The determination of the dischargeability of a particular debt is a core proceeding. 28 U.S.C. §157(b)(2)(I). This matter arises from the Debtors' bankruptcy itself and from the provisions of the Bankruptcy Code, and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

Mrs. VanDettum's Complaint alleges that the debt owed to her by the Debtors is nondischargeable based on a mix of legal theories. After several introductory paragraphs, Count I—the only count—is captioned as being

brought pursuant to §523(a)(4) for "Fraud/Defalcation." 11 U.S.C. §523(a)(4). The Complaint then goes on to specifically refer to §523(a)(2) and the exception to discharge for debts obtained by "false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. §523(a)(2). Further along in the Complaint, the Debtors are alleged to have committed a willful and malicious injury to Mrs. VanDettum, although the limited factual allegations refer only to her property and not to her person. 11 U.S.C. §523(a)(6). The Complaint's prayer for relief asks that the Debtors' obligation to Mrs. VanDettum be determined to be nondischargeable pursuant to §523(a)(4) and §523(a)(6). In his opening statement at trial, however, Mrs. VanDettum's attorney referred only to §523(a)(2) as the basis for the relief sought. As will be explained below, Mrs. VanDettum failed to prove the elements of any of the causes of action referenced in her Complaint.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. §523(a)(2)(A). To establish the discharge exception for false pretenses or a false representation, a creditor must prove that "(1) the debtor made a false representation of fact, a representation (2) which the debtor (a) either knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive, (3) upon which the creditor justifiably relied." *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 471 (Bankr.

N.D. Ill. 2011) (citations omitted). False representations include express misrepresentations by either words or conduct while false pretenses include "implied misrepresentations or conduct intended to create and foster a false impression." *Id.* (citation omitted). "Actual fraud" does not require a misrepresentation or reliance, but the creditor must show that some intentional fraud occurred that created the debt at issue. *Id.* at 471-72; *see Husky Int'l Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016). To prevail on any legal theory under §523(a)(2)(A), the creditor must prove through direct or circumstantial evidence that the debtor intended to defraud the creditor. *Jacobs*, 448 B.R. at 472.

The exception to discharge under §523(a)(4), as pled by Mrs. VanDettum, excepts debts "for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. §523(a)(4). To prevail, a creditor must prove that the debtor acted as a fiduciary to the creditor when the debt was created and that the debt was caused by fraud or defalcation. *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016) (citations omitted). For the purposes of §523(a)(4), a fiduciary relationship requires "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (quoting *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994)). While "fraud" under §523(a)(4) has essentially the same meaning as under §523(a)(2), "defalcation" requires "a culpable state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary

behavior." *Jahrling*, 816 F.3d at 925 (quoting *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757 (2013)).

Section 523(a)(6) excepts from discharge "debts for willful and malicious injury by the debtor to another entity[.]" 11 U.S.C. §523(a)(6). To prevail, a creditor must prove that the debtor intended to cause harm, not merely that the debtor intended the act that led to the injury. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012). Debts resulting from fraud, however, do not fall under §523(a)(6); they must be found nondischargeable under §523(a)(2) or (a)(4) if they are to be found nondischargeable at all. *Wachovia Securities, LLC, v. Jahelka (In re Jahelka)*, 442 B.R. 663, 671-72 (Bankr. N.D. Ill. 2010) (citations omitted). The creditor bears the burden to prove each element of an exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Mrs. VanDettum's attorney attempted to use the default judgment that was entered against the Debtors in state court to prove that they defrauded Mrs. VanDettum. He asked the Court to take judicial notice of the state court complaint and default judgment, apparently for the purpose of having the allegations in the complaint treated as final findings of fact that would bind this Court in this proceeding.

Judicial notice is a "shortcut" to the traditional fact-finding process that allows courts to consider indisputable facts without the need to hear evidence as to those facts. *Highway J Citizens Group, U.A. v. U.S. Dep't of Transportation*, 2016 WL 4288995, at *3 (E.D. Wis. Aug. 15, 2016). "The court may judicially

-8-

notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Accordingly, courts may take judicial notice of documents in the public record, such as complaints that have been filed and judgments that have been entered. *See Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 789 (N.D. Ind. 2014).

"That a fact sought to be noticed is found in a court's records is not talismanic; the fact still must be of the type described in Fed. R. Evid. 201[.]" *Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 146 (B.A.P. 9th Cir. 1988) (citations omitted). Thus, courts cannot take judicial notice of documents filed in another court if the purpose is to establish the truth of the assertions contained in those documents where those assertions are subject to reasonable dispute. *Shoun*, 28 F. Supp. 3d at 789 (citing *Felty v. Driver Solutions, LLC*, 2013 WL 5835712, at *2 (N.D. Ill. Oct. 30, 2013)). A court "may only take judicial notice of the *truth* of facts asserted in documents such as orders, judgments, and findings of fact and conclusions of law because of the principles of collateral estoppel, *res judicata*, and the law of the case." *In re Snider Farms, Inc.*, 83 B.R. 977, 986 (Bankr. N.D. Ind. 1988) (emphasis in original).

This Court may take judicial notice of the fact that Mrs. VanDettum filed a complaint against the Debtors in state court and that the complaint contained allegations of breach of contract, fraud, and emotional distress. The Court may also take judicial notice of the fact that a judgment for $20,002.73

was entered. None of these facts can be disputed. But taking judicial notice of the filing of the complaint and the entry of the default judgment does not result in the allegations of the complaint being considered as conclusive proof—or proof at all—of the elements required to be proven here.

The doctrine of collateral estoppel, or issue preclusion, governs the binding effect of prior judicial findings in subsequent litigation. Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010) (citation omitted). Collateral estoppel can apply in dischargeability proceedings to prevent relitigation of the elements required to satisfy the exception to discharge at issue where those facts were established in a prior case. *Grogan*, 498 U.S. at 285. "The premise underlying the doctrine is that once an issue has been decided in a prior proceeding, no further fact-finding function remains to be performed." *Reyes v. Reyes (In re Reyes)*, 2008 WL 2020501, at *2 (Bankr. C.D. Ill. May 9, 2008) (Perkins, J.).

In contrast with collateral estoppel, *res judicata,* or claim preclusion, does not typically apply to dischargeability proceedings. Under *res judicata,* a final judgment on the merits bars further claims by a plaintiff based on the same cause of action that was already decided. *Archer v. Warner*, 538 U.S. 314, 319 (2003). The establishment of the existence of a debt and the determination of dischargeability are distinct causes of action. *Id.* Thus, *res judicata* does not "prevent the Bankruptcy Court from looking beyond the record of the state-

court proceeding and the documents that terminated that proceeding . . . in order to decide whether the debt at issue" is nondischargeable. *Id.* at 320 (citation omitted).

The preclusive effect of a state court judgment is determined by the law of the state in which the judgment was entered. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002). Because the state court judgment at issue in this case was entered by an Illinois state court, Illinois law applies.[1] Under Illinois law, "[c]ollateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849 (2001) (citation omitted). The party asserting collateral estoppel has the burden of showing "with clarity and certainty the precise issues" to which it applies. *Hammond v. North American Asbestos Corp.*, 207 Ill. App. 3d 556, 562, 565 N.E.2d 1343, 1347 (1991). Even if all of the elements of collateral estoppel are met, courts have discretion to refuse to apply it if doing so would be "fundamentally unfair." *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 945, 902 N.E.2d 146, 156 (2009).

---

[1] Collateral estoppel is also referred to as "estoppel by verdict" in Illinois decisions. *See Decatur Housing Authority v. Christy-Foltz, Inc.*, 117 Ill. App. 3d 1077, 1082, 454 N.E.2d 379, 383 (1983).

An important limitation on collateral estoppel is that the factual issue must have actually been litigated in the prior court for it to have preclusive effect in subsequent litigation. *Housing Authority for La Salle Cty. v. Young Men's Christian Association of Ottawa*, 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962 (1984). The issue to be given preclusive effect must also have been necessary to the judgment in the first litigation. *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387, 739 N.E.2d 445, 451 (2000) (citation omitted). Detailed findings of fact from the earlier proceeding are often necessary for the subsequent court to ascertain what issues were actually decided. *R & J Construction Supply Co. v. Juma (In re Juma)*, 530 B.R. 682, 690 (Bankr. N.D. Ill. 2015) (citing *Jacobs*, 448 B.R. at 469).

Where a default judgment is entered without actual litigation of the issues underlying the complaint, collateral estoppel does not apply. *See S & S Automotive v. Checker Taxi Co.*, 166 Ill. App. 3d 6, 8, 520 N.E.2d 929, 930 (1988) (contrasting collateral estoppel with *res judicata*). "Even where the court determines specific damages based on verified pleadings and an evidentiary prove-up hearing, that does not remedy the lack of actual, contested litigation." *Reyes*, 2008 WL 2020501, at *3 (citation omitted). Default judgment on a multi-count complaint presents additional impediments to the application of collateral estoppel where the judgment does not identify the count or counts on which it is based. *Success Bank v. McPherson (In re McPherson)*, 2011 WL 2134370, at *3 (Bankr. C.D. Ill. May 26, 2011) (Perkins, J.).

Collateral estoppel does not apply in this case to compel entry of a judgment that the Debtors' debt to Mrs. VanDettum is nondischargeable. The Debtors did not file an answer to Mrs. VanDettum's state court complaint; they did not appear at any hearings until after a final judgment was entered and they were served with a citation to discover assets. The record does not indicate that any evidence was taken and the state court did not issue any findings of fact supporting the entry of default judgment. The litigation was purely one-sided, precluding the application of collateral estoppel.

Moreover, Mrs. VanDettum's state court complaint contained three counts—for breach of contract, emotional distress, and fraud—and the default judgment did not specify upon which count or counts it was based. The lack of specificity as to the basis for the state court judgment means it is unknown what factual elements were necessary for the entry of the judgment. The principles of collateral estoppel do not govern the outcome of this proceeding.

Based on the evidence actually presented, Mrs. VanDettum failed to meet her burden of proof as to any of the three causes of action alleged. As to the claim under §523(a)(2), no evidence was presented that the Debtors misled Mrs. VanDettum in any way. Mrs. VanDettum did not identify any statements that either Debtor made that were untrue. Mr. Wease's testimony regarding his financial struggles is uncontroverted. Likewise, no evidence was presented that the Debtors' financial condition was different than they represented it to be when they requested the loans. The Debtors apparently intended to repay the initial loan when they signed the promissory note, as they made several

voluntary payments on that note. Because Mrs. VanDettum failed to establish that the Debtors engaged in misleading conduct or acted with intent to defraud her, she has not met her burden of proof under §523(a)(2).

The failure to prove fraudulent conduct or intent also defeats Mrs. VanDettum's claim based on fraud in a fiduciary capacity under §523(a)(4). No evidence was presented that Mr. Wease engaged in intentional or reckless misconduct of the type necessary to establish defalcation under §523(a)(4). Further, Mrs. VanDettum's claim under §523(a)(4) fails because she did not establish that Mr. Wease held a fiduciary relationship with her. Mr. Wease did testify that he was employed by Western and Southern, and Mr. VanDettum said that his wife held funds with that company. But Mr. Wease's role with Western and Southern was not explained and it is not apparent that his employment had anything to do with Mrs. VanDettum's decision to withdraw funds from her annuity. It is also undisputed that Mr. Wease was no longer employed with Western and Southern when Mrs. VanDettum withdrew most of the funds. Additionally, there is no indication that Mrs. Wease was ever affiliated with Western and Southern. Even if the Court were to find that Mr. Wease had engaged in the type of fiduciary misconduct that could establish an exception to discharge, that misconduct would not be imputed to Mrs. Wease.

Finally, Mrs. VanDettum has not established that the Debtors intended to harm her, as would be required to establish an exception to discharge under §523(a)(6). Mr. Wease testified that he and Mrs. VanDettum had a friendly relationship, and that testimony was uncontroverted. All that the evidence

-14-

showed was that Mr. Wease, while struggling with mental health and employment-related issues, asked Mrs. VanDettum for several loans, which she provided. No evidence was presented that the Debtors were motivated to ask for the loans by anything other than a desire to ease their family's financial hardship.

Mrs. VanDettum's attorney did attempt to present some evidence of fraud for the purpose of establishing nondischargeability under §523(a)(2). He offered as evidence a Final Judgment and Consent Decree entered into between Mr. Wease and the Attorney General of Illinois related to Mr. Wease's landscaping and home repair business. In the decree, Mr. Wease admitted that he violated the Illinois Consumer Fraud and Deceptive Business Practices Act by accepting money from customers but not providing services or refunds, and by failing to provide proper documentation as required by Illinois law. According to Mrs. VanDettum's attorney, the consent decree is proof that the Mr. Wease defrauded Mrs. VanDettum because his actions were "part and parcel" of a "widespread practice of scamming people for money."

The Court did not consider the consent decree as evidence of anything. Mrs. VanDettum was not a party to the statutory fraud litigation and she does not appear on the list of victims identified in the decree. The debt at issue here was not incurred through Mr. Wease's landscaping and remodeling business; rather, it was incurred by his personal financial dealings with Mrs. VanDettum.

Further, consideration of this evidence is prohibited by the Federal Rules of Evidence. Federal Rule of Evidence 404 governs the use of character

-15-

evidence and prior bad acts. Fed. R. Evid. 404. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). And, except in circumstances not applicable in this proceeding, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Mrs. VanDettum's attorney attempted to use this unrelated statutory fraud litigation to prove that Mr. Wease committed fraud in his dealings with Mrs. VanDettum. This is exactly what is prohibited by Rule 404.

### IV. Conclusion

Mrs. VanDettum failed to meet her burden of proof as to any of her causes of action. No evidence was presented from which it could be found that the Debtors misrepresented their financial condition or their intent to repay Mrs. VanDettum. Nor was evidence presented that they intended to defraud her or harm her in any way. The Debtors' debt to Mrs. VanDettum will not be excepted from their discharge.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. See written Order.

###